

**IT IS ORDERED as set forth below:**

**Date: June 13, 2019**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| IN RE:<br><br>JAMES WILLIAM CAMPBELL, JR. and MANDY LATISHA CAMPBELL,<br><br>      Debtors. | CASE NO. 18-40400-BEM<br><br><br>CHAPTER 7 |
| JULIE APEL, Executor of Estate of John Whitley,<br><br>      Plaintiff,<br><br>v.<br><br>JAMES WILLIAM CAMPBELL, JR. and MANDY LATISHA CAMPBELL,<br><br>      Defendants. | <br><br><br>ADVERSARY PROCEEDING NO. 18-4013-BEM |

**O R D E R**

This matter is before the Court on Plaintiff's *Second Motion for Default Judgment*

(the "Motion"). [Doc. 15]. On April 20, 2018, Plaintiff filed a complaint to determine the

dischargeability of her debt under 11 U.S.C. § 523(a)(2)(A) and (a)(6) (the "Complaint"). [Doc. 1]. An alias summons was issued on July 10, 2018. [Doc. 6]. The Complaint and summons were served on Defendants and Defendants' counsel on July 16, 2018. [Doc. 7]. The Clerk entered default on September 14, 2018. The Court held a hearing on the Motion on February 12, 2019. At the hearing, counsel for Defendants reported to the Court that an attorney met with Defendant James Campbell and reviewed this proceeding with him, and that Mr. Campbell did not want counsel to take any action. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons stated herein, the Court will grant the Motion.

Default judgments are governed by Federal Rule of Civil Procedure 55(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7055. Whether to enter default judgment is within the discretion of the Court. *Hays v. Wellborn Forest Prods., Inc. (In re Spejcher)*, No. 06-6347, 2006 WL 6592065, at *1 (Bankr. N.D. Ga. Oct. 30, 2006) (Massey, J.) (citing *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985)). To warrant entry of a default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When a defendant fails to answer, the plaintiff's well-pleaded factual allegations are deemed admitted. *Id*. Facts that are not well pleaded and conclusions of law are not deemed admitted. *Id.* Therefore, the Court must determine whether Plaintiff's well-pleaded factual allegations are sufficient to justify entry of judgment. *See EFS Inc. v. Mercer (In re Mercer)*, No. 13-3031, 2013 WL 3367253, at *1 (Bankr. M.D. Ala. July 5, 2013).

The Complaint sets forth factual allegations as follows: John Whitley is a judgment creditor of Defendants and their business, Campbell's Customs. [Doc. 1 ¶ 1]. Mr. Whitley passed away, and Plaintiff is the executor of his estate. [Id.]. Mr. Whitley's judgment

2

arises from a lawsuit in the State Court of Spalding County, Georgia, for fraud and violations of

the Georgia Fair Business Practices Act ("GFBPA"), among other things. [Id.]. Mr. Whitley was

granted summary judgment on the fraud and GFBPA claims and awarded damages of

$87,986.07[1] plus punitive damages. [Id.] Copies of state court *Order Granting Plaintiff's Motion*

*of Summary Judgment* (the "SJ Order") and the *Order Amending Orders Striking Defendant's*

*Answer and Entering Default Judgment and Granting Plaintiff's Motion for Summary Judgment*

(the "Amended Order") are attached to the Complaint. [Docs. 1-1, 1-2].

In the SJ Order, entered on June 28, 2017, the state court set forth the following

facts:

> On August 14, 2014, Plaintiff paid Defendants $2,000.00 to repair Plaintiff's 1955 Chevy S 210, which included $800.00 for transporting the vehicle from Arizona to Georgia and an initial payment of $1,200.00 for repair/remodel work on the vehicle. On or about September 2, 2014, Defendants quoted an extensive list of services to refurbish Plaintiff's vehicle with a total cost of $16,800.00. The quote contained language at the bottom stating that the work performed on Plaintiff's vehicle was "Not to Exceed $16,800.00 without written approval." The quote also stated that the cost of return shipping from Georgia to Arizona would be paid by Defendants. Shortly after the parties agreed on the scope of work and the cost, Defendants issued Plaintiff an invoice totaling $16,800.00.

> From September 2014 onward, Plaintiff paid Defendants a monthly amount of $1,300.00 for a total amount of $15,600.00, in addition to the $1,200.00 initial payment. On November 13, 2014, Defendants emailed Plaintiff to inform him that work was progressing ahead of schedule. On December 11, 2014 and February 13, 2015, Plaintiff paid Defendants $1,800.00 and $2,200.00, respectively, for a total payment of $4,000.00 for an engine and transmission. Plaintiff later paid Defendants an additional $1,100.00 for re-chromed bumpers to be installed on Plaintiff's vehicle. Altogether, these payments totaled $21,900.00.

---

[1] This figure has been reported as both $87,986.07 and $87,968.07. Based on a calculation of the damages awarded by the state court, it appears the correct figure is $87,986.07. [See Doc. 1-2 at 3, 5-6].

At the time, Plaintiff's nephew, Joe Whitley, was an employee of Defendants. Plaintiff's nephew confronted Defendants about sub-par work being performed on Plaintiff's car. Defendants threatened to fire Joe if he did not paint over rust on Plaintiff's vehicle. After the vehicle was painted, Defendants fired Joe for reporting to Plaintiff the status of the vehicle's repairs and that it had been exposed to the elements while improperly stored by Defendants. Until August of 2015, Defendants continued to represent to Plaintiff that work was being completed on schedule. Plaintiff never gave permission for any work to occur outside of that listed in Defendants' September 2, 2014 quote for repairs. In August of 2015, Plaintiff received an invoice from Defendants stating that Plaintiff's account was paid in full.

On August 25, 2015, Plaintiff asked Defendants for an update on the status of the repairs. Three days later, on August 28, 2015, Defendants informed Plaintiff for the first time via email that the vehicle was considerably short of the quoted work and that there had been cost overruns in the amount of $10,245.00 and the total cost overrun would be $14,005.00. Defendants also notified Plaintiff for the first time that work had ceased on Plaintiff's vehicle over a month prior, and advised Plaintiff that if their vehicle was not picked up by September 14, 2015, Defendants would charge Plaintiff a storage fee of $20 per day. Defendants further threatened to dispose of Plaintiff's car within ninety (90) days if it was not retrieved. On September 8, 2015, Plaintiff's brother, Julius Whitley, retrieved Plaintiff's vehicle.

Upon retrieving the vehicle, Plaintiff discovered that the vehicle did not contain the engine that Plaintiff purchased for $4,000.00, but contained an older engine of lower quality. In total, Plaintiff paid Defendants $21,900.00, which included: $16,800 for initially quoted work; $1,100 for re-chromed bumpers; and $4,000.00 for an additional engine and transmission not quoted in the initial scope of work. Defendants never completed the scope of work quoted by Defendants on September 2, 2014, nor did Plaintiff receive all of the vehicle parts and materials listed in the quote.

[Doc. 1-1 at 1-2].

The state court concluded that "Mr. Whitley is entitled to recover $22,523.00 from Defendants for their breach of contract." [Id. at 4]. With respect to fraud, the court found that Defendants made false representations, that they "knowingly deceived" and "knowingly

4

attempted to defraud" Mr. Whitley and "intended Mr. Whitley to act on the false

representations," and that Mr. Whitley's reliance was justified. [Id. at 4]. The court concluded

that Mr. Whitley "suffered substantial harm" based on Defendants' false representations "in that

Mr. Whitley paid Defendants a total of $21,900.00 for vehicle repair work that was never

completed ...." [Id.]. The SJ Order made no findings regarding the GFBPA and punitive damages

claims. [Id. at 5]. The SJ Order concluded by stating that Defendants "are all liable and there is

no genuine issue of material fact as to Plaintiff's claims against Defendants for Breach of

Contract, Fraud and therefore is GRANTED in the amount of $22,523.00 plus court costs." [Id.

at 6].

   The Amended Order, entered on July 27, 2017, found Mr. Whitley was entitled to

summary judgment for Defendants' violations of the GFBPA, O.C.G.A. § 10-1-393(a), (b)(7),

and awarded treble damages of $67,569 and attorney fees of $20,417.07 pursuant to O.C.G.A. §

10-1-399(b) for a total of $87,986.07. [Doc. 1-2 at 2-3]. In its discussion of the GFBPA, the

court noted that Defendants quoted services to Mr. Whitley and the services were not provided as

quoted; Defendants intentionally misrepresented the quality of their services; Mr. Whitley relied

on Defendants' representations about the quality of the services; and Mr. Whitley was damaged

as a result of his reliance. [Id. at 2-3].

   The Amended Order also found Mr. Whitley entitled to summary judgment for

punitive damages pursuant to O.C.G.A. § 51-12-5.1(b)[2] in an amount to be determined at a

separate hearing. [Id. at 4]. The Amended Order set forth the facts that justified punitive damages

and stated that "[d]ue to the repetitive and continuous state of Defendants' willful and malicious

---

[2] "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

conduct against not only Mr. Whitley, but various other individuals, an award of punitive damages is appropriate here to punish Defendants and deter future bad acts." [Id.].

The Amended Order also awarded Mr. Whitley attorney fees in the amount of $5,000 pursuant to O.C.G.A. § 9-11-37(b)(2)(E)[3] and awarded attorney fees in the amount of $20,417.07 pursuant to O.C.G.A. § 13-6-11.[4] [Id. at 4-5].

The Amended Order amended the SJ Order to state that Defendants are liable for claims of "Breach of Contract and Fraud and [sic] in the amount of $22,523.00 plus court costs" and for "Violations of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. in the additional amount of $45,046.00, and for Costs and Attorney's Fees in the amount of $20,417.07 plus costs" and "punitive damages in an amount to be decided at a special-set hearing." [Id. at 5-6.].

On October 24, 2017, counsel for Defendant James Campbell and counsel for Mr. Whitley appeared before the state court and represented that the parties had reached a settlement on punitive damages as to Mr. Campbell and Campbell's Customs. [Doc. 1 ¶ 2]. Under the settlement, Mr. Whitley agreed to dismiss the count for punitive damages upon payment of the $33,333.33. [Id. ¶ 2, 6] No defendant in the state court case has paid the settlement amount. [Id. ¶ 4]. The punitive damage claim against Ms. Campbell remains unliquidated. [Id. ¶ 6].

Defendants filed a Chapter 7 petition on February 27, 2018. [Id. ¶ 5]. They listed Mr. Whitley as an unsecured creditor with a contingent, unliquidated claim of $87,986. [Id. ¶ 6]. They did not list the $33,333.33 debt for the settlement of the punitive damage against Mr. Campbell claim or the punitive damage claim against Ms. Campbell. [Id.].

---

[3] O.C.G.A. § 9-11-37(b)(2) provides for payment of attorney fees as a sanction for a party's failure to comply with a discovery order.
[4] O.C.G.A. § 13-6-11 sets forth the requirements for recovering expenses of litigation in contract disputes.

6

The Motion seeks a ruling that the judgment of $87,986.07 plus costs is nondischargeable as to both Defendants; the punitive damages settlement of $33,333.33 is nondischargeable as to James Campbell; punitive damages in an amount to be determined by a jury or otherwise established by law is nondischargeable as to Mandy Campbell; and costs of $350 and attorney fees of $4,203.45 for this proceeding are nondishchargeable as to both Defendants. Plaintiff requests the determination of dischargeability under 11 U.S.C. § 523(a)(2)(A) and (a)(6), which provide that a Chapter 7 discharge does not discharge a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> ...
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(2)(A), (6).

To establish a debt is nondischargeable based on fraud, the Plaintiff must show: "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *Securities and Exchange Comm'n v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998). In this case, Plaintiff provided a copy of two state court orders finding Defendants liable for fraud, violations of the GFBPA, and punitive damages. Because fraud under Georgia law requires the same showing as fraud under § 523(a)(2)(A), collateral estoppel may apply to the fraud claims. *Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 924 (Bankr. N.D. Ga. 2010) (Hagenau, J.).

The GFBPA provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" are unlawful.

O.C.G.A. § 10-1-393(a). Among such unlawful acts are "[r]epresenting that goods or services are

of a particular standard, quality, or grade or that goods are of a particular style or model, if they

are of another[.]" *Id*. § 10-1-393(b)(7). To succeed on a claim under the GFBPA, the plaintiff

must show "a violation of the act, causation and injury." *Regency Nissan, Inc. v. Taylor*, 194 Ga.

App. 645, 647, 391 S.E.2d 467, 470 (1990). Unlike a claim of fraud, a violation of the GFBPA

does not require a knowing intent to deceive. *Id*. "However, a plaintiff who can show that the

defendant committed an *intentional violation* is entitled to recover *treble* damages, so scienter

and intent to deceive retain legal significance in FBPA litigation." *Id.* (emphasis in original).

Therefore, collateral estoppel may also apply to the GFBPA claims under § 523(a)(2)(A).

Collateral estoppel bars relitigation of an issue previously decided in another

proceeding. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980). When the prior

decision arises in a state proceeding, the court applies the collateral estoppel law of the

jurisdiction where the prior decision was issued, in this case Georgia. *St. Laurent v. Ambrose (In*

*re St. Laurent)*, 991 F.2d 672, 676 (11th Cir. 1993). To succeed under collateral estoppel,

Plaintiff must establish:

> (1) the parties in the earlier case in which a judgment was rendered
> are the same in the later case in which the doctrine of collateral
> estoppel or issue preclusion is asserted; (2) the issues insofar as
> collateral estoppel is asserted are the same; (3) the issues were
> actually litigated and a final judgment was entered as to all such
> issues; (4) the determination of the issue was essential to the prior
> judgment; and (5) the parties had a full and fair opportunity to
> litigate the issues in question.

*Allen v. Morrow (In re Morrow)*, 508 B.R. 514, 520 (Bankr. N.D. Ga. 2014) (Massey, J.)

(citations omitted).

Plaintiff and Defendants were all parties to the prior action. One of the counts in

the prior action was fraud. As noted above, there is no significant difference between fraud under

8

Georgia law and fraud under § 523(a)(2)(A). Another count in the prior action was violation of

the GFBPA. In the Amended Order, the state court specifically cited O.C.G.A. § 10-1-393(b)(7),

which provides that misrepresentation of the quality of goods and services is a violation of the

GFBPA. The Court further found that the violation was intentional and that Mr. Whitley was

entitled to treble damages and attorney fees. Accordingly, there is no significant difference

between the elements of Mr. Whitley's GFBPA claim and § 523(a)(2)(A). Therefore, the identity

of parties and identity of issues is the same. Given that the state court granted summary judgment

as to liability on the fraud and GFBPA claims and given the absence of any allegation regarding

appeals, the issue was actually and finally litigated. Furthermore, the fact that the state court

found liability for punitive damages and found Mr. Whitley was entitled to treble damages on the

GFBPA claims indicates the elements of fraud were essential to the state court's adjudication of

both the fraud claim and the GFBPA claim. Because the state court litigation was decided on

summary judgment and the Complaint alleged Mr. Campbell had counsel at the hearing on

punitive damages, Defendants had a full and fair opportunity to litigate the issue.

        Based on the foregoing, the Court finds a sufficient basis in the pleadings to

conclude Plaintiff is entitled to a default judgment on her claim under § 523(a)(2)(A). The initial

$22,523 was attributed to both breach of contract and fraud; because they can be attributed to the

fraud claim, they are nondischargeable. That amount was trebled for intentional violations of the

GFBPA, raising the total damages by $45,046, which amount is nondischargeable as having been

incurred by fraud. In addition, the state court awarded attorney fees of $20,417.07 for the

intentional violation of GFBPA, which is also nondischargeable as having being incurred by

fraud. Finally, the court found Defendants liable for punitive damages. Mr. Campbell settled his

punitive damages claim for $33,333.33; Ms. Campbell's liability remains unliquidated. Because

punitive damages are only available in tort actions—in this case fraud—they are also

nondischargeable. Having determined Plaintiff's debt is nondischargeable in its entirety under §

523(a)(2)(A), the Court need not consider Plaintiff's claim under § 523(a)(6).

To the extent Plaintiff seeks an award of her fees and costs in this proceeding, she

does not cite any basis for such an award. In *TranSouth Fin. Corp. of Fla. v. Johnson*, 931 F.2d

1505, 1507 & n.3 (11th Cir. 1991), the court stated that there is no statutory basis for an award of

fees and costs to a prevailing creditor in a dischargeability proceeding. *Id.* at 1507 & n.3;

*compare* 11 U.S.C. § 523(d) (providing for an award of costs to a prevailing *debtor* in certain

circumstances). However, the prevailing creditor is entitled to fees and costs if allowed by an

enforceable provision in the underlying contract between the parties. 931 F.2d at 1507; *see also*

*Cadle Co. v. Martinez (In re Martinez)*, 416 F.3d 1286, 1290 (11th Cir. 2005) (prevailing debtor

who was not entitled to fees and costs under § 523(d) was entitled to fees and costs based on

enforceable contract provision). Here, Plaintiff has not alleged the agreement between Mr.

Whitley and Defendants included a provision for fees and costs. Therefore, fees and costs will

not be awarded. Accordingly, it is

ORDERED that Plaintiff's Motion for Default Judgment is GRANTED; the state

court judgment in the amount of $87,986.07 is nondischargeable as to both Defendants; punitive

damages in the amount of $33,333.33 are nondischargeable as to Mr. Campbell; and Ms.

Campbell's liability for punitive damages in an amount to be determined in the appropriate

nonbankruptcy proceeding is nondischargeable as to Ms. Campbell.

**END OF ORDER**

## **Distribution List**

Grant E. McBride
Smith, Welch, Webb & White, LLC
2200 Keys Ferry Court
McDonough, GA 30253

Orion G. Webb
Smith Welch Webb & White, LLC
280 Country Club Drive
Stockbridge, GA 30281

James William Campbell, Jr.
2731 Willow Springs Rd
Dallas, GA 30132

Mandy Latisha Campbell
2731 Willow Springs Rd
Dallas, GA 30132

E. L. Clark
Clark & Washington, LLC
Bldg. 3
3300 Northeast Expwy.
Atlanta, GA 30341